UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES
INTERNATIONAL UNION NATIONAL
INDUSTRY PENSION FUND, et al.,

    Plaintiffs,

    v.

HAMILTON PARK HEALTH CARE
CENTER, LTD, et al.,

    Defendants.

Civil Action No. 14-84 (JDB)

## MEMORANDUM OPINION AND ORDER

Before the Court is [42] plaintiffs' motion for summary judgment. In light of the narrow, fact-intensive, and case-specific manner in which it will deny this motion, the Court doubts an opinion will be of use to anyone other than these parties. The Court will therefore write for the parties (hereafter, "the Fund" and "Alaris"), presume a familiarity with the facts and procedural history of this case, and jump straight into the issues presented by the summary judgment filings. Other readers seeking more background are referred to the Court's earlier opinion in this case, Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Hamilton Park Health Care Ctr., Ltd, 304 F.R.D. 65 (D.D.C. 2014), and the parties' various filings. The filings directly relevant to this opinion are [42] the Fund's motion for summary judgment ("Pls.' Mot."), [44] Alaris's memorandum in opposition ("Defs.' Opp'n"), and [45] the Fund's reply ("Pls.' Reply").

The Fund's motion argues as follows: A collective bargaining agreement (CBA) requires Alaris to make certain contributions to the Fund on behalf of employees covered by the CBA, and this obligation is enforceable in federal court by virtue of the Employee Retirement Income Security Act. Pls.' Mot. at 4–5. On the fifteenth of each month, Alaris must submit a remittance

report that shows covered employees' gross earnings for the previous month. Id. at 6. On the same date, Alaris must pay the required contributions, which are a percentage of those gross earnings. Id. If Alaris fails to pay in full or on time, it is subject to interest charges at 10% per year and liquidated damages at 20% of late or unpaid contributions, as specified by the Fund's Collection Policy. Id. at 8–9.

The Fund says that a review of the remittance reports reveals that Alaris failed to make certain required contributions, and/or failed to make them on time, for various months between July 2013 and April 2015. Id. at 7. According to the Fund's records and calculations, which are summarized in an attached spreadsheet, Alaris owes $9,373.21 in contributions for these months, as well as $1,565.14 in interest and $6,284.97 in liquidated damages. Id. at 7, 9; see also Ex. E to Anderson Decl. [ECF No. 42-6] (the spreadsheet). In the Fund's view, Alaris has failed to adduce any facts that call into doubt the amounts owed or the Fund's right to demand them, and so the Fund is entitled to summary judgment in its favor. Pl.'s Mot. at 9.

Although Alaris opposes the Fund's motion, it does so on narrow grounds. Alaris does not dispute that it is bound by the CBA and the Fund's governing documents (which the Fund provided with its motion). Nor does it deny that it has failed to make complete and timely payments. Instead, Alaris's five-page opposition takes issue only with the amount of damages, which it says the Fund has not adequately supported. Defs.' Opp'n at 2–3. Alaris elaborates with three points. First, it says that before the Fund filed this summary judgment motion, it had told Alaris that Alaris owed $1,874.65 in liquidated damages—and yet the Fund now inexplicably demands $6,284.97 in liquidated damages. Id. at 3. Second, Alaris says the Fund has been inconsistent about whether the period for which it is seeking interest and liquidated damages begins in July 2013 or October 2014. Id. at 3–4. Third, Alaris faults the Fund for failing to provide "any month-to-month gross payroll documentation as a foundation" for the damages sought. Id. at 4.

The Fund's reply highlights that Alaris has failed to contest its liability, Pls.' Reply at 2, 7–8, and then addresses the damages issues. As for liquidated damages, the Fund says Alaris was wrong to rely on the $1,874.65 figure in "an earlier, unauthenticated, and inaccurate spreadsheet used for the purposes of confidential settlement negotiations." Id. at 4. The higher figure the Fund now demands reflects the fact that the Fund was forced to litigate this issue, triggering increased liquidated damages. Id. at 4–5. The Fund also says that it has always been seeking interest and liquidated damages for a period beginning in July 2013, not October 2014; a reference to October 2014 in its summary judgment motion was simply a typo. Id. at 3 n.1. And in response to Alaris's complaint about lack of payroll documentation, the Fund has submitted "[t]rue, correct, and complete copies of all remittance reports and contributions received from [Alaris] for July 2013 through the present." Anderson Supp. Decl. [ECF No. 45-1] ¶ 5; see also Pls.' Exs. 1a–1c [ECF Nos. 45-2 to 45-4] (copies of remittance reports and contribution checks). The Fund argues that Alaris has always had access to the relevant payroll information and yet has "not come forward with any affidavits, declarations, or scintilla of evidence of a countervailing accounting of owed contributions and resulting penalties." Pls.' Reply at 6–7. The Fund says it is therefore entitled to summary judgment. Id. at 7.

The Court concludes that it cannot enter summary judgment for the Fund at present. The Court agrees with the Fund that Alaris, by failing to make any relevant arguments in its opposition, has conceded that it is liable to the Fund according to the terms of the CBA and the Fund's governing documents. Alaris has challenged only the extent of that liability. On that subject, however, Alaris seems to have a point. The Court cannot blindly accept the Fund's figures. Even if Alaris had completely failed to respond to the Fund's motion, such that the Fund was entitled to a default judgment, the Court would still need to examine the amount of damages the Fund claimed. See, e.g., Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC,

531 F. Supp. 2d 56, 57 (D.D.C. 2008) ("Although the default establishes a defendant's liability, the Court makes an independent determination of the sum to be awarded in the judgment unless the amount of damages is certain."). The Court has undertaken such an examination here, training its focus on the spreadsheet at the foundation of the Fund's damages analysis. See Anderson Decl. ¶ 25 ("A true and correct spreadsheet detailing [Alaris's] delinquencies is attached hereto as Exhibit E."); Anderson Supp. Decl. ¶ 7 (reiterating accuracy of spreadsheet). That examination has left the Court sufficiently skeptical of the Fund's numbers that it is unwilling—at least for now—to enter judgment in the amount the Fund requests.

The overarching problem is that the Fund's spreadsheet is a remarkably inscrutable and unhelpful document. The Fund's bottom-line assessment of what it is owed—$9,373.21 in contributions, $1,565.14 in interest, and $6,284.97 in liquidated damages—is placed at the bottom left of the spreadsheet, disconnected from the other information presented. None of the columns add up to any of these three figures, nor is it obvious how the total of any column even relates to any of them. Near the bottom right is an entry that reads "Amount Due[:] 12,158.66," which is the sum of the totals of two columns ("Underpayment" and "Add'l Interest Due"), but this amount is seemingly unrelated to any of the three bottom-line figures. Particular columns are confusing in their own right. What is the difference between "Amount Paid" and "Additional Amount Applied"? Between "Interest" and "Add'l Interest Due"? Do the amounts in the "Liquidated Damages" column bear any relation to the bottom-line request for $6,284.97 in liquidated damages? (Seemingly not.) And, more importantly, by what formula have the various interest and liquidated damages figures been calculated? The Fund's supporting declarations shed almost no light. The Court believes it has deduced answers to some of these questions, but it should not be required to do so. The place for puzzles is the children's playroom or the Sunday newspaper, not summary judgment filings. If the Fund wants a judgment for $X, it should be able to produce

a spreadsheet and supporting materials that make eminently clear where $X comes from. This spreadsheet, by contrast, and the supplemental evidence the Fund submitted with its reply, leave the Court doubtful about all three of the Fund's bottom-line figures.

Start with the Fund's assertion that Alaris owes $9,373.21 in contributions. Although the Fund does not explain as much, this figure comes from taking the "Contributions Due" figure for each month and subtracting both the "Amount Paid" and the "Additional Amount Applied." There is inexplicably no column in the spreadsheet representing the resulting amount (despite its critical role in other calculations), which might be called the "Basic Underpayment." The total of all the amounts in this hypothetical "Basic Underpayment" column equals the contributions figure the Fund requests. (Although when the Court performs this calculation with the numbers provided, it gets $9,373.22, not $9,373.21.)

This seems like a logical way of assessing total contributions owed, but the Court does not trust the underlying numbers. The numbers for July 2014 in particular stand out. Whereas all of the other "Amount[s] Paid" are listed in parentheses, indicating an amount subtracted from the amount owed, the July 2014 "Amount Paid"—$769.05—is not in parentheses. It thus appears that the Fund has treated the July 2014 "Amount Paid" as if it were a negative payment—that is, as if Alaris had taken money from the Fund.[1] But that makes no sense, and is contradicted by the Fund's own evidence, which includes a check made out to the Fund for $769.05. Pls.' Ex. 1b [ECF No. 45-3] at 26 (check number 2964). This apparent error led the Court to examine further the $8,136.01 "Additional Amount Applied" for that month. The Court cannot see how the evidence supports this figure either. In addition to the check for $769.05, the Fund has provided

---

[1] This is confirmed by the "Underpayment" figure for July 2014. The Court has deduced that "Underpayment" equals "Total Due Per Month" minus both "Amount Paid" and "Additional Amount Applied." The $2,064.06 "Underpayment" figure for July 2014 is correct only if the $769.05 is treated as a negative value:

$$9{,}431.02 - (-769.05) - 8{,}136.01 = 2{,}064.06$$

copies of three other checks for July 2014 contributions, but those three checks add up to only $7,648.25, not $8,136.01. See Pls.' Ex. 1b at 24, 31, 33 (checks for $1,467.16, $5,813.35, and $367.74).[2] The Court has not combed through all of the other figures related to the total amount of contributions owed, but this is enough to undermine its confidence in the Fund's bottom-line figure of $9,373.21.

Next is the Fund's request for $1,565.14 in interest. The Fund arrived at this figure, the Court has deduced, by adding all of the amounts in both the "Interest" and "Add'l Interest Due" columns. (Although when the Court performs this calculation with the numbers provided, it gets $1,565.16, not $1,565.14.) But how were the amounts in these two columns calculated? One of the Fund's declarations gives some insight into the "Interest" column. The declaration explains that the Fund charged $124.72 in "Interest" for November 2014 because Alaris paid its contributions for that month 39 days late, and the Collections Policy specifies a 10% annual interest rate. See Anderson Decl. ¶ 32. The Fund's "Interest" formula thus appears to be the amount of "Contributions Due" ($11,672.64) multiplied by the annual interest rate (0.1) multiplied by the number of years the payment was late (39/365):

$$11{,}672.64 \times 0.1 \times \left(\frac{39}{365}\right) = 124.72$$

So far, so good. But if that is the formula, many of the other numbers in the "Interest" column make no sense. Take the very first one: where does $70.29 for July 2013 come from? Was Alaris even late in making its contribution payment for that month? The "Due Date" and "Date Rcv'd" columns suggest Alaris was 7 days late, but the "# Days Late" column says 0. (Similar discrepancies regarding "# Days Late" appear for several other months as well.) Even if

---

[2] Page 28 of Exhibit 1b contains a document that is by no means self-explanatory but might reflect yet another July 2014 payment, this one for $236.23. Even so, the total stills fall short of the $8,136.01 listed on the spreadsheet.

6

Alaris was 7 days late, how does that lead to an interest charge of $70.29? The formula used for November 2014 would suggest a much lower charge:

$$7{,}520.90 \times 0.1 \times \left(\frac{7}{365}\right) = 14.42$$

And what is the Court to make of the "Interest" amounts for August 2013, October 2013, August 2014, and September 2014? The spreadsheet indicates that Alaris's payments for these months were made <u>on time</u>. So why is there anything at all under "Interest"? It appears that the Fund is not using a consistent formula for the amounts in this column.

The Court has more confidence in the "Add'l Interest Due" column. To arrive at these amounts, the Fund took the "Basic Underpayment" for each month—the "Contributions Due" minus both "Amount Paid" and "Additional Amount Applied"—multiplied it by the 10% interest rate, and multiplied that by the number of years between the "Due Date" and July 1, 2015 (the date the spreadsheet was prepared). Thus, for example, $167.28 of "Add'l Interest Due" for November 2014 comes from the following calculation:

$$(11{,}672.64 - 1{,}343.49 - 7{,}245.48) \times 0.1 \times \left(\frac{198}{365}\right) = 167.28$$

The Fund appears to have applied this formula consistently, but the Court reiterates its lack of confidence in the Fund's underlying "Amount Paid" and "Additional Amount Applied" numbers (most notably the negative "Amount Paid" for July 2014).

Finally, there is the Fund's request for $6,284.97 in liquidated damages. To get this figure, the Fund first took 20% of the $9,373.21 in contributions it says are owed, which equals $1,874.64. It then added 20% of the "Contributions Due" for October 2014 and November 2014, which amount to $2,075.80 and $2,334.53, respectively. (1,874.64 + 2,075.80 + 2,334.53 = 6,284.97.) The Court has a number of concerns with these calculations. To start, as already noted, the Court is skeptical of the $9,373.21 figure. Next, it is unclear why the Fund thinks it is owed 20% of the

<u>entire</u> amount of the "Contributions Due" for October 2014 and November 2014. It is not seeking 20% of the <u>entire</u> amount for any other months, even months in which Alaris was (at least according to the "Date Rcv'd" column) late in making its payment (such as July 2014). Why isn't the Fund entitled to only 20% of the amount as yet unpaid for those months, or perhaps 20% of the amount unpaid at the time the Fund filed its summary judgment motion? And even if the Fund is owed 20% of the entire "Contributions Due" for those two months, why is it additionally entitled to a further 20% of the unpaid portions? (The $1,874.64 incorporates 20% of the unpaid "Contributions Due" for those two months.) Isn't the Fund double-counting with respect to October 2014 and November 2014?

In sum, then, the Court lacks confidence in all three of the Fund's bottom-line numbers—contributions, interest, and liquidated damages—and hence deems it inappropriate to enter judgment in the Fund's favor. It should be noted that it is the Fund's responsibility to ensure that accurate numbers are presented—it should not be left to the Court to do so. The Court will permit the Fund, however, to file a renewed motion for summary judgment that rectifies the inadequacy in its presentation. In doing so, the Fund must provide a much clearer accounting. It is not enough, the Court stresses, for the Fund to address just those months and numbers the Court has highlighted in the foregoing discussion. The Fund must provide a comprehensive explanation of its method, such that that Court can easily confirm <u>all</u> of the Fund's numbers for <u>every</u> month.[3] Specifically, a revised spreadsheet and accompanying materials must:

- Describe what each column represents as a conceptual matter. (For instance, what does "Additional Amount Applied" refer to?)

---

[3] Given the low dollar value at issue and the anticipated accuracy of the Fund's revised figures, the Court expects that the parties will make a good-faith effort to settle this matter.

- Indicate the record evidence that supports those entries that are raw numbers.  (For instance, what record evidence supports the $7,202.40 "Additional Amount Applied" figure for August 2014?)

- Indicate the methodology used to calculate other entries.  (For instance, how is "Interest" calculated?)

- Indicate the provisions of the Collection Policy (or other governing documents) that justify the formulas used.

A renewed motion may also address any issues relating to contributions owed for May 2015 through December 2015.

For the foregoing reasons, it is hereby

**ORDERED** that [42] plaintiffs' motion for summary judgment is **DENIED**; and it is further

**ORDERED** that plaintiffs may file a renewed motion for summary judgment by not later than February 29, 2016; defendants may file an opposition by not later than March 21, 2016; and plaintiffs may file a reply by not later than March 31, 2016.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated:  January 14, 2016